UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| JUDICIAL WATCH, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 18-cv-1979 (TSC) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Judicial Watch Inc. has sued Defendant U.S. Department of Justice ("DOJ") to compel compliance with a Freedom of Information Act ("FOIA") request under 5 U.S.C. § 552. (ECF No. 1 ("Compl.")) The DOJ moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's complaint for failure to exhaust administrative remedies. (ECF No. 8-1 ("Def.'s Mot. to Dismiss.")) For the reasons set forth below, the DOJ's motion will be GRANTED.

### I. BACKGROUND

Judicial Watch is a not-for-profit, educational organization that "seeks to promote transparency, accountability, and integrity in the government and fidelity to the rule of law." (Compl. at ¶ 3.)

Over the past few years, Plaintiff, along with several other organizations and individuals, have sought documents relating to the investigation surrounding former Secretary of State Hillary Clinton's use of a personal e-mail account. Plaintiff has filed at least three FOIA requests related to the investigation, one of which is the subject of this case. In each of the three cases, Plaintiff is represented by Michael Bekesha and the DOJ is represented by Cesar Lopez-Morales.

1

### A. Plaintiff's July 7, 2016 FOIA Request

On October 13, 2016, Plaintiff sued the DOJ regarding a FOIA request submitted on July 7, 2016, to the Federal Bureau of Investigation ("FBI"), a component of the DOJ. *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 16-cv-2046-TSC (D.D.C. Oct. 13, 2016). Plaintiff sought all FD-302 forms, *i.e.* investigative forms, prepared as part of the FBI's investigation, along with all records of communications between any FBI personnel concerning the investigation. (16-cv-2046-TSC, ECF No. 1 ("July 7, 2016 Request Compl.") at ¶ 5.) Plaintiff also requested any records regarding a June 27, 2016 meeting between former Attorney General Loretta Lynch and former President Bill Clinton. (*Id.*)

During a status conference on January 17, 2017, the parties discussed the scope of the DOJ's review and the method by which the DOJ was processing the numerous requests for documents related to the Clinton e-mail investigation. (*See* 16-cv-2046-TSC, ECF No. 15 ("Jan. 17, 2017 Conf. Tr.").) DOJ counsel reiterated that the FBI was processing the entire investigative file, containing approximately 10,000 pages, at a rate of 500 pages per month. (*See id.* at 10:2–3, 12:6–12, 13:9–13.) DOJ counsel further explained, and the court agreed, that the 500-page production rate was necessary, in part, because the sensitive nature of the documents required a multi-step, information-security review. (*See id.* at 8:20–9:6, 14:5–14.) Counsel for the DOJ stated that the documents were publicly posted the first Friday of every month (*see id.* at 6:13–20), and Plaintiff acknowledged that it was able to review the released files—62% of which were responsive to its request—as well as observe that a couple hundred pages had been withheld in their entirety, (*see id.* at 3:14–25). In addition, although the DOJ's custom is to Bates stamp the documents at the conclusion of all releases (s*ee id.* at 5:16–20), it agreed to assign a universal Bates number to all records in the investigative file to facilitate communication with Plaintiff about objections (*see id.* at

23:7–11). The parties also agreed to file a joint status report every ninety days. (*See id.* at 24:6–9.)

### B. Plaintiff's October 12, 2016 FOIA Request

On December 5, 2016, Plaintiff filed a second lawsuit regarding a FOIA request submitted to the FBI on October 12, 2016. *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 16-cv-2369-ABJ (D.D.C. Dec. 5, 2016). Plaintiff sought all records discovered, recovered, retrieved from, or found on any equipment used to support former Secretary Clinton's email system. (16-cv-2369-ABJ, ECF No. 1 ("October 12, 2016 Request Compl.") at ¶ 5.) Plaintiff also sought all records related to the FBI's efforts to discover, recover, retrieve, or find emails or text messages stored on the equipment. (*See id.*)

During a status conference in that case before Judge Randolph Moss on January 24, 2017, the parties again discussed the scope of and method by which the DOJ was processing all FOIA requests for documents related to the Clinton email investigation. (*See* 16-cv-2369-ABJ, ECF No. 8 ("Jan. 24, 2017 Status Conf. Tr.").) The DOJ restated "its commitment to handle the requests that it was receiving and to release all nonexempt portions of the Clinton investigative file" at a rate of 500 pages per month. (*See id.* at 6:11–18.) Plaintiff's counsel then stated his understanding that the Clinton investigative file is "a little over 10,000 pages . . . so at 500 pages a month," it would take "between 20 and 24 months for all the material to be produced." (*See id.* at 7:25–8:4.) Plaintiff also challenged the DOJ's practice of monthly releases to the electronic library as applied to the facts of that case, arguing that because its request was narrower than other earlier requests for the entire file, the DOJ should extract documents responsive to Plaintiff's request and review those before completing the review of the entire file. (*See id.* at 8:4–24, 9:9–10:1.) Judge Moss, concerned with what appeared to be an attempt to jump ahead of others in the queue, asked Plaintiff

3

to review its pending requests and decide whether it would prefer the DOJ to stop working on one of Plaintiff's pending requests and prioritize Plaintiff's instant request. (*See id.* at 17:10–28:15.)

During a follow-up status conference on February 7, 2017, the DOJ told Judge Moss that a resource swap was not feasible because the individuals reviewing the Clinton investigative file were reviewing only that file. (*See* 16-cv-2369-ABJ, ECF No. 9 ("Feb. 7, 2017 Status Conf. Tr.") at 4:7–6:6.) The parties then engaged in another discussion regarding the scope of the investigative file and how it was being produced. (*See id.* at 6:7–20:16.) At the conclusion of the hearing, the FBI agreed, as it did in the other case, to identify responsive records at the time of release by the universal Bates number. (*See id.* at 20:17–21:22.) That case is ongoing.

### C. Plaintiff's July 25, 2018 FOIA Request

On July 25, 2018, Plaintiff submitted a third FOIA request to the FBI, this time requesting the entire investigative file of the FBI's investigation of Hillary Clinton's use of a personal e-mail account.[1] (Compl. at ¶¶ 5, 8.)

By letter dated July 26, 2018, the FBI acknowledged receipt of the request and assigned it a case number. (*Id.* at ¶ 9; *see also* ECF No. 8-2 ("Acknowledgement Letter") at Ex. A.) On August 10, 2018, the FBI sent Plaintiff a letter stating that (1) Plaintiff's "request is currently being processed," (2) "records are available on the FBI's FOIA library on its website," (hereinafter, "the Vault") (3) "the available records represent an interim release of information," and (4) "Plaintiff's FOIA request will remain open while monthly releases are placed on its website." (Compl. at ¶ 10.) The letter also informed Plaintiff of its right to an administrative appeal and detailed the process for filing an appeal. (ECF No. 8-3 ("Vault Letter") at Ex. B.)

---

[1] Plaintiff claims that it believed that once production of all FD-302 forms was completed for the July 7, 2016 FOIA request, it would continue to receive records regarding the entire investigative file and could challenge withholdings related to the entire file. (Compl. at ¶¶ 6–7.) Because the FBI disagreed, Plaintiff submitted this additional FOIA request. (*Id.* at ¶¶ 7–8.)

Plaintiff then filed this case. It acknowledges that the FBI "has been producing all records contained within the Hillary Clinton investigative file" and at the time had "made 24 productions of records." (Compl. at ¶ 6.) However, it contends that the FBI did not decide, within the prescribed statutory period, whether to comply with Plaintiff's FOIA request because the FBI had not

> (i) produced all records responsive to Plaintiff's FOIA request or demonstrated that the requested records are lawfully exempt from production; (ii) notified Plaintiff of the scope of any responsive records the FBI intends to produce or withhold and the reasons for any withholdings; or (iii) inform[ed] Plaintiff that it may appeal any adequately specific, adverse determinations.

(Compl. at ¶¶ 11, 14–15.)

## II. STANDARD OF REVIEW

FOIA cases are typically decided on motions for summary judgment. *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). However, where an agency argues that the requester has failed to exhaust its administrative remedies, courts analyze the matter under Federal Rule of Civil Procedure 12(b)(6). *See Tereshchuk v. Bureau of Prisons*, 851 F. Supp. 2d 157, 161 (D.D.C. 2012) (analyzing motion to dismiss for failure to exhaust administrative remedies under Rule 12(b)(6)); *Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 100 (D.D.C. 2012) (same).

"To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when it alleges sufficient facts to permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). When considering a defendant's motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual

5

inferences drawn from well-pleaded factual allegations. *See Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.") (internal quotation marks omitted), *aff'd on reh'g*, 628 F.2d 199 (D.C. Cir. 1980).

### III. ANALYSIS

The "exhaustion of administrative remedies in a FOIA case is treated as an element of a FOIA claim, which, as with all elements of any claim, must be proved by the plaintiff in order to prevail." *Bonner v. Soc. Sec. Admin.*, 574 F. Supp. 2d 136, 139 (D.D.C. 2008). "Failure to exhaust administrative remedies is *not* a mere technicality, and a court must decline to decide the merits of an unexhausted FOIA claim when the plaintiff fails to comply with procedures for administrative review." *Nat'l Sec. Counselors v. C.I.A.*, 931 F. Supp. 2d 77, 99–100 (D.D.C. 2013) (emphasis in original). However, exhaustion is required only when, within twenty business days of the request, an agency makes and communicates its decision whether to comply with the FOIA request. 5 U.S.C § 552(a)(6)(A)(i). "[I]f the agency has not issued its 'determination' within the required time period, the requester may bring suit directly in federal district court without exhausting administrative appeal remedies." *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 182 (D.C. Cir. 2013) (hereinafter, "*CREW*").

FOIA's general requirement that a requester exhausts its administrative remedies before bringing an action in federal court provides the agency with "an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Khine v. U.S. Dep't of Homeland Sec.*, 334 F. Supp. 3d 324, 333 (D.C. Cir. 2018) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). The exhaustion requirement "obviates unnecessary judicial review" by allowing "top managers of an agency to correct mistakes made at lower levels." *Id.* And the "administrative appeal mechanism undergirds FOIA's 'innovation-

6

forcing' function, which requires an 'agenc[y] to consider "adjustments to . . . practices, policies, personnel, and funding as may be necessary to improve its implementation of" the statute.'" *Id.* at 333–34 (quoting *Judicial Watch, Inc. v. United States Dep't of Homeland Sec.*, 895 F.3d 770, 789–90 (D.C. Cir. 2018) (Pillard, J., concurring)).

In *CREW*, the D.C. Circuit addressed "what kind of agency response qualifies as a 'determination'" for exhaustion purposes, and concluded that "the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *CREW*, 711 F.3d at 188.

At issue in this case is whether, before Plaintiff filed this suit, the DOJ determined and communicated to Plaintiff the scope of the documents it intended to produce and withhold.[2]

The DOJ contends that the Vault Letter dated August 10, 2018, coupled with the information it communicated to Plaintiff in the other two lawsuits, amounted to a final determination and therefore triggered the exhaustion requirement. (Def.'s Mot. to Dismiss at 10–12.) The DOJ notes that (i) it gathered and began processing and publicly releasing on a monthly basis the entire investigative file in September 2016 (*see id.* at 10); (ii) Plaintiff is aware, through the releases and other cases, of the total number of pages in the investigative file, the number of pages that have been reviewed as well as the FOIA exemption asserted on withheld documents, and the number of pages remaining to be reviewed (*see id.* at 11–12); and (iii) the Vault letter informed Plaintiff of its right to appeal and how to file an appeal (*see id.* at 12).

---

[2] As noted above, Plaintiff's Complaint alleges that the DOJ's decision failed to comport with any of the three *CREW* requirements, but now it only challenges the DOJ's communication of the scope.

Plaintiff maintains that because the August 10, 2018 Vault Letter was not a final determination, the exhaustion requirement was not triggered. (ECF No. 11 ("Pl.'s Opp'n") at 3–4.) It argues that the letter "did not provide information on the 'scope' of the Clinton investigative file." (*See id.* at 3.) Specifically, Plaintiff notes that the FBI did not mention: (1) the specific number of pages in the investigative file, (2) the structure and organization of the file, or (3) any exemptions it intended to claim with respect to withheld documents. (*See id.*) Moreover, it argues that because the FBI provided no information regarding the claimed exemptions, Plaintiff is effectively precluded from appealing any exemptions. (*See id.* at 4.)

The DOJ maintains that Plaintiff's focus on the information presented in the August 10, 2018 Vault Letter instead of the information provided as a whole is misplaced. (ECF No. 13 ("Def.'s Reply") at 2–8.) It notes that before this suit was filed, it: (1) gathered all records responsive to Plaintiff's FOIA request and provided information to Plaintiff regarding the volume of the investigative file; (2) released in full or in part approximately 2,673 pages contained in the investigative file; (3) identified pages, in full or in part, to be withheld under FOIA exemptions; and (4) informed Plaintiff of its right to an administrative appeal. (*See id.* at 4.)

The parties and this court agree that *CREW* establishes the foundation for what constitutes a proper determination for FOIA exhaustion purposes. However, contrary to Plaintiff's position, *CREW* is not "on all fours" with circumstances here.

In *CREW*, the plaintiff submitted a FOIA request to the Federal Election Commission ("FEC") on March 7, 2011, seeking several categories of records. *CREW*, 711 F.3d at 183. On March 8, 2011, the FEC acknowledged receipt of the request. *Id.* Subsequently, the parties reached an agreement under which CREW would exclude certain categories of documents from the FEC's initial search for responsive records, and in return, the FEC would provide non-exempt responsive

documents and information regarding withheld documents to CREW on a rolling basis. *Id.* On May 23, 2011, because two months had passed without CREW receiving any documents or information from the FEC, CREW sued, alleging, in part, that the FEC failed to make a determination within the statutory period. *Id.*

At the time of CREW's complaint, the FEC had begun gathering and reviewing potentially responsive records. *Id.* On June 15, 2011, it made its first production and informed CREW that "[t]oday's letter does not constitute a final agency decision, and thus is not subject to appeal." *Id.* On June 23, 2011, the FEC made its final production, informed CREW of the basis for its withholdings, and advised CREW of its right to administratively appeal any adverse FOIA determination. *Id.* The FEC then moved to dismiss CREW's complaint for failure to exhaust administrative remedies. *Id.* at 184.

Presented with this timeline, the D.C. Circuit found that CREW was not required to exhaust administrative remedies because the FEC did not make its determination within the 20-day window and before CREW filed suit. *Id.* at 190. The Circuit made clear that while actual production of the records is not required, an agency, "within the relevant time period," must provide information regarding the scope of documents it intends to produce as well as withhold under FOIA exemptions. *Id.* at 186. In so holding, the Circuit rejected the FEC's argument that an agency can meet the determination requirement by expressing a "future intention to produce non-exempt documents and claim exemptions," because such a theory creates a Catch-22: "A requester cannot appeal within the agency because the agency has not provided the necessary information. Yet the requester cannot go to court because the requester has not appealed within the agency." *Id.* at 185–86. Thus, the Circuit held, it is not enough for an agency to "decide to later decide," *id.* at 186, it must (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to

produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the "determination" is adverse, *id.* at 188.

Here, the DOJ maintains, and the court agrees, that Plaintiff had far more information when it filed this lawsuit than did the plaintiff in *CREW*.

Plaintiff does not and cannot contend that it did not have actual notice of the scope of the Clinton investigation file before the FBI sent the August 10, 2018 Vault Letter. Not only has the FBI been producing records responsive to Plaintiff's request since September 2016, but Plaintiff and the DOJ have been in communication for over two years about the production of the file. *See Judicial Watch Inc.*, 16-cv-2046-TSC; *Judicial Watch Inc.*, 16-cv-2369-ABJ. Indeed, due to the DOJ's representations in proceedings where both parties are represented by the same counsel as in this case, Plaintiff was apprised of (1) the estimated number of pages in the investigative file, (2) the types of documents contained in the file, and (3) the exemptions the FBI intended to claim with respect to withheld documents.[3] (*See, e.g.*, Jan. 24, 2017 Status Conf. Tr. at 7:25–8:4 (Plaintiff's Counsel: "So the Clinton investigative file is a little over 10,000 pages . . . so at 500 pages a month the Justice Department, the government has said [it] would be between 20 and 24 months for all the material to be produced."); Jan. 17, 2017 Conf. Tr. at 16:16–17:4 (Defense Counsel represented that FD-302 summaries had been produced, but that 302s documenting other type of work had not yet been reviewed); Jan. 24, 2017 Status Conf. Tr. at 9:2–13 (Plaintiff's Counsel described the

---

[3] Plaintiff claims that the number of pages was not mentioned in the letter, but Plaintiff was aware of the number before the DOJ sent the letter. In mentioning the specific number of pages, the court does not intend to create dissonance with the *National Security Counselors v. C.I.A.* decision, wherein Chief Judge Howell found that "an agency determination need not include a volume estimate regarding any withheld material to require a requester to exhaust its administrative remedies before filing suit." No. 12-CV-284 (BAH), 2013 WL 12324697, at *3 (D.D.C. June 13, 2013) (noting that *CREW* court analyzed several FOIA provisions before reaching its conclusion without implying or mentioning that agency was required to convey a volume estimate).

types of devices from which the FBI collected information); Feb. 7, 2017 Status Conf. Tr. at 18:9–19:3 (Court: "What is there other than 302s and e-mails and communications, letters and things like that? What else would be in a file like this?" Plaintiff's Counsel: "I was going through and making different piles. I just don't recall what the other records were because I wasn't looking. . . . My understanding is that there are a bunch of other records, types of records that are in there."); 16:16–23 (Plaintiff's Counsel stated that he reviewed the online library and saw that it "listed page one withheld, page two withheld for referral"). Plaintiff was also aware of the method the DOJ was using to process the entire file. (*See generally* Jan. 17, 2017 Conf. Tr.; Jan. 24, 2017 Status Conf. Tr.; Feb. 7, 2017 Status Conf. Tr.)

In the August 10, 2018 Vault Letter, the FBI provided information beyond mere notice of its receipt of Plaintiff's request, and the information provided constituted an adequate response. *See Waterkeeper All. v. U.S. Coast Guard*, No. 13-CV-289 (RMC), 2014 WL 5351410, at *11 (D.D.C. Sept. 29, 2014) ("Moreover, even if the D8 Legal Office's response could be considered timely, it only 'provided notice' to Waterkeepers that it had received the FOIA request; this is insufficient to constitute an adequate response."). First, the letter reiterated what Plaintiff knew since at least 2017: records responsive to its FOIA request were being processed and publicly posted on the FBI's online FOIA library on the first Friday of each month. The Vault Letter advised Plaintiff to monitor the online FOIA library for updated material responsive to its FOIA request. Second, it explained that the responsive records were searchable by entering "Hillary R. Clinton" as the search term. Third, the Vault Letter informed Plaintiff that the available records constituted an interim release of information, and that the FOIA request would remain open while additional records were being produced. Per the letter, Plaintiff would be notified once the final release was posted and the request was closed. Finally, the Vault Letter informed Plaintiff how to file an appeal. (*See id.*)

When viewing the documents in the online library, Plaintiff could view the exemptions invoked for each redacted and withheld document.

Against this backdrop, the court cannot equate the information provided by the FBI with the expression of a future intention to produce responsive records in *CREW*. In that case, the court was concerned that agencies could "keep FOIA requests bottled up in limbo for months or years on end" by issuing a response that precludes a requester from pursuing both an administrative appeal and a federal lawsuit. *CREW*, 711 F.3d at 187; *see also Nat'l Sec. Counselors v. C.I.A.*, No. 12-CV-284 (BAH), 2013 WL 12324697, at *2 (D.D.C. June 13, 2013) ("The thrust of CREW is that, to comply with the FOIA's time limits in issuing a 'determination,' an agency cannot 'simply decide to later decide.'"); *Bartko v. U.S. Dep't of Justice*, No. 13-CV-1135 (JEB), 2014 WL 12787640, at *7 (D.D.C. Sept. 9, 2014) ("Under these circumstances, unlike in *CREW*, the requester is not left in administrative limbo. The agency has issued a final 'determination,' and the requester may, if he chooses, file an immediate and substantive administrative appeal.") When Plaintiff brought this lawsuit, it was in a prime position to begin the administrative appeal process. *See Machado Amadis v. Dep't of Justice*, No. 1:16-CV-2230 (TNM), 2019 WL 2211120, at *4–5 (D.D.C. May 22, 2019) (focusing on whether plaintiff had sufficient information to pursue an appeal in advance of filing suit); *Coss v. U.S. Dep't of Justice*, 98 F. Supp. 3d 28, 35–36 (D.D.C. 2015) (same). Indeed, Plaintiff's complaint acknowledges that, when it brought this case, the FBI had made 24 productions. (*See* Compl. at ¶ 6.) And by bringing suit in this court and attempting to bypass an administrative appeal, Plaintiff undermines the "purposes of exhaustion" and the "administrative scheme." *See Oglesby*, 920 F.2d at 61.

The court therefore finds that the August 10, 2018 Vault Letter, coupled with prior representations in virtually identical litigations with the same counsel, constituted a determination to

comply with Plaintiff's FOIA request.  The DOJ deserves an opportunity to apply its expertise, correct mistakes, and develop a factual record that could prevent the need for unnecessary judicial review.  *Id.*  Accordingly, Plaintiff must pursue an administrative appeal before seeking judicial review.

### IV.     CONCLUSION

For the foregoing reasons, the DOJ's motion to dismiss is hereby **GRANTED**.  The clerk of the court is respectfully requested to close this case.

A corresponding order will issue separately.

Date:  September 19, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge